UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESSEX INSURANCE COMPANY, etc.,

     Plaintiff,

v.                        CASE No. 8:14-CV-356-T-23TGW

KART CONSTRUCTION, INC., *et al.,*

     Defendants.

_____

## REPORT AND RECOMMENDATION

     The plaintiff insurance company filed this declaratory action against the defendants, seeking a judgment that a claim against its insured, Kart Construction, for damages resulting from the destruction of a cellular telephone tower is not covered  under its general liability insurance policy. Kart Construction asserted in response affirmative defenses to the complaint and three counterclaims.  The plaintiff filed a motion to strike most of those affirmative defenses and to dismiss the counterclaims (Doc. 31).

     Additionally, defendant Sabre Industries, the general contractor that hired Kart Construction to perform work on the cellular telephone tower, asserts a crossclaim against Kart Construction that it is liable for the claimed

loss. The plaintiff has filed a motion to sever, or dismiss, the crossclaim from this action (Doc. 49).

These motions were referred to me for a report and recommendation. For the reasons stated below, I recommend that the plaintiff's Motion to Sever Sabre's Crossclaim Against Kart Construction, or Alternatively, Dismiss Sabre's Crossclaim Against Kart Construction Without Prejudice (Doc. 49) be granted to the extent that Sabre Industries's crossclaim is severed from this action. Further, I recommend that the plaintiff's Motion to Strike Respondent, Kart Construction Inc.'s Affirmative Defenses and Motion to Dismiss Kart Construction, Inc.'s Counterclaims (Doc. 31) be granted to the extent that count III of Kart Construction's counterclaim alleging a bad faith denial is dismissed without prejudice because it is premature.[1]

I.

Crown Castle, Inc., is the owner of a cellular telephone tower in Sanford, Florida (see Doc. 96, p. 1 n.1). It retained defendant Sabre

---

[1]An earlier order resolved the plaintiff's request to strike the affirmative defenses (Doc. 84).

Industries, Inc. ("Sabre") as a general contractor to perform improvements on that tower (Doc. 1, ¶11). Sabre, in turn, hired defendant Kart Construction, Inc. ("Kart") as a subcontractor to perform welding work that required Kart to install plates and bridge stiffeners on the exterior of the cellular telephone tower (id., ¶¶12, 13; Doc. 21, ¶13). It is alleged that, while Kart was performing welding operations, a coaxial cable inside the cellular telephone tower combusted, resulting in a fire that destroyed the tower (Doc. 1, ¶¶14, 17; Doc. 21, ¶17). The damage is estimated at approximately $300,000 (Doc. 1, ¶18).

Kart submitted to the plaintiff, Essex Insurance Company ("Essex"), a claim for damage resulting from the destruction of the tower pursuant to a commercial general liability insurance policy, number 3CZ7376, that Essex issued to Kart ("the policy") (Doc. 1, p. 3). That policy was effective from July 24, 2013, to July 24, 2014, and named Sabre in the policy as an additional insured (id.). Essex responded with a reservation of rights letter, stating that, while it believed the claim was precluded by policy exclusions, it would investigate the claim (Doc. 41, p. 2).

The plaintiff subsequently initiated this lawsuit against Kart, Sabre, and others, arguing that the claim is not covered under the policy, and seeking a declaration that it has no duty to indemnify Kart or Sabre in connection with the claim because coverage is precluded by the policy's "Damage to Property" exclusions (Doc. 1).  Specifically, Essex relies upon the policy exclusions for property damage to

> real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations if the 'property damage' arises out of those operations; or ... property that must be ... replaced because 'your work' was incorrectly performed on it.

(Id., ¶24; Doc. 1-4, ¶¶2.(5)j.(5),(6)).[2]

Kart answered the complaint, contending that its claim is covered under the insurance policy, and asserting fourteen affirmative defenses (Doc. 21). Further, Kart asserts a three-count counterclaim against Essex for breach of contract, declaratory judgment, and insurance bad faith, based on Essex's refusal to pay the claim (id.).

---

[2]If either policy exclusion is applicable, it would also preclude recovery by Sabre because the Blanket Additional Insured provision states that, "[w]hen coverage does not apply for the Named Insured, no coverage ... shall be afforded to the Additional Insured" (see Doc. 1, ¶26).

Additionally, Sabre answered the complaint and asserted a "Cross-Claim for Declaratory Relief and Indemnity" against Kart (Doc. 29, pp. 4-8). Sabre seeks against Kart declaratory relief, indemnification, and contribution based on an indemnification clause in its Subcontractor Agreement with Kart (id., p. 5). Sabre alleges further that Kart's negligence caused the destruction of the cellular telephone tower and, to the extent that Sabre was negligent, seeks a determination of its comparative fault with Kart (id., pp. 6-7).

Essex has filed two motions in connection with Kart's and Sabre's pleadings. Essex argues in its Motion to Strike Kart Construction's Affirmative Defenses and Motion to Dismiss Kart's Counterclaims (Doc. 31) that most of Kart's affirmative defenses are not cognizable. Further, Essex argues that Kart's counterclaim for declaratory relief and breach of contract are merely mirror images of Essex's claims and, therefore, unnecessary. Finally, Essex contends that Kart's bad faith claim is premature.

Essex argues in its Motion to Sever Sabre's Crossclaim Against Kart Construction, or Alternatively, Dismiss Sabre's Crossclaim Against Kart Construction Without Prejudice (Doc. 49) that Sabre's crossclaim is not

properly asserted in this action, and that it will unnecessarily complicate and lengthen this litigation.   Both of these motions were referred to me for disposition (if denied), and for a report and recommendation (if granted) (Docs. 35, 65).

Oral argument was subsequently held on these motions (Doc. 83). As memorialized in a prior Order (Doc. 84), Kart agreed during the hearing to withdraw many of its affirmative defenses, and others were stricken without prejudice. Further, Kart conceded during oral argument that its bad faith counterclaim is premature, but requested abatement of the counterclaim instead of dismissal.

Additionally, I raised at the hearing Sabre's contention that Essex did not have standing to seek dismissal of the crossclaim, as it is a dispute between Sabre and Kart. Essex did not have a meaningful response to this contention.   Rather, Essex responded that, in order to remedy its concerns about being drawn into Sabre's tort claim, severance of the crossclaim "would be fine with us."   The court subsequently ordered supplemental memoranda regarding the legal basis for severance of Sabre's crossclaim, which the parties submitted (Docs. 87, 89, 90).

## II.

As indicated, Essex has moved to dismiss, or sever from this action, Sabre's crossclaim against Kart (Doc. 49). Sabre alleges against Kart claims for declaratory relief, indemnity, and contribution. Essex argues that this crossclaim must be dismissed or severed from this lawsuit because it is not a proper crossclaim under Rule 13(g), F.R.Civ.P. (id., p. 3). That rule provides in pertinent part:

> **Crossclaim Against a Coparty.** A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.

Essex argues that Sabre's crossclaim, which is based upon obligations created under a Subcontractor Agreement between Sabre and Kart, does not arise out of the same transaction or occurrence as its complaint, which seeks an interpretation of an insurance policy to determine whether coverage for Kart's claim is precluded under a policy exclusion (Doc. 49, p. 4).

Sabre's primary response to this motion is that Essex lacks standing to seek dismissal of Sabre's crossclaim, as the crossclaim is asserted against Kart, not Essex (Doc. 59, p. 3). In this regard, Sabre emphasizes that a crossclaim under Rule 13 may be brought only "by one party against a co-party." Sabre argues that it therefore follows that only a co-party can move to dismiss the crossclaim. Here, Essex is not a co-party, Augustin v. Mughal, 521 F.2d 1215, 1216 (8th Cir. 1975) (co-parties are on the same side in the principal litigation), and it seeks dismissal of a crossclaim that is not asserted against it.

Sabre buttresses its opposition by citing to Essex Builders Group, Inc. v. Amerisure Ins. Co., 429 F. Supp.2d 1274 (M.D. Fla. 2005) (Doc. 59, p. 3). In that case, Essex Builders Group also sought the dismissal of a crossclaim to which it was not a party. Chief United States District Judge Anne C. Conway rejected Essex Builders Group's motion, explaining that "[t]he Court cannot conceive how [the plaintiff] has standing to seek dismissal of the [defendant's] cross-claim ... given that ... [the] Cross-Claim" is not asserted against Essex Builders Group. Id. at 1291. Although Judge Conway does not identify the legal authority underlying her conclusion, the

contention is persuasive that Essex here has no business seeking dismissal of a claim that is not asserted against it.  Importantly, Essex cites no legal authority indicating that it does have standing in this circumstance to seek dismissal of the crossclaim.  Moreover, as the court reasoned in <u>Garity</u> v. <u>United States of America</u>, 1980 WL 1546 at *1 (E.D. Mich.), it is "difficult to see that the [movant] has any real stake in the outcome of the cross-claim" to entitle it to request dismissal of the crossclaim.

Similarly, in this case, Essex does not have a stake in the outcome of the crossclaim that entitles Essex to have the crossclaim dismissed.  Significantly, Kart has answered the crossclaim and strongly opposes its dismissal (Docs. 52, 64).  Moreover, at the hearing Essex was unable to identify any legal authority that it has standing in this circumstance, or present a cogent reason for permitting it to seek dismissal of a claim between other parties.  Therefore, I recommend that Essex's request for dismissal of Sabre's crossclaim against Kart be denied.

On the other hand, Essex argues persuasively that it possesses a substantial interest in this litigation that warrants severance of Sabre's crossclaim from this action.  Essex seeks severance of Sabre's crossclaim

pursuant to Rule 21, F.R.Civ.P. (Doc. 89, p. 2). That rule states (emphasis added):

### Rule 21. Misjoinder and Nonjoinder of Parties

Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. **The court may also sever any claim against a party.**

Rule 21 severance creates two discrete, independent actions, which then proceed as separate lawsuits, with each resulting in its own final judgment from which an appeal may be taken. United States v. O'Neil, 709 F.2d 361, 368 (5th Cir. 1983); Gaffney v. Riverboat Services of Indiana, Inc., 451 F.3d 424, 442 (7th Cir. 2006).[3]

Although this severance provision appears in a rule related to the misjoinder of parties, it is not so limited. Thus, "[u]nder Rule 21, the court may sever any claim ... and proceed with it separately." United States v. O'Neil, supra, 709 F.2d at 367; Potts v. B&R, LLC, 2014 WL 1612364 at *3 (M.D. Fla.) ("Rule 21 authorizes district courts to sever any claim against any party."); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d

_____

[3]In contrast, a separate trial under Rule 42(b), F.R.Civ.P., does not result in discrete, independent suits and there is one final, appealable judgment. See United States v. O'Neil, supra, 709 F.2d at 368.

§1689, p. 514 (1986). Notably, Sabre has not argued that Rule 21's severance provision applies only to the misjoinder of parties (see Doc. 90).

"A district court has broad discretion when deciding whether to sever claims under Rule 21 and may consider factors such as judicial economy, case management, prejudice to parties, and fundamental fairness." Potts v. B&R, LLC, supra, 2014 WL 1612364 at *3; 7 Wright, Miller & Kane, Federal Practice and Procedure, supra, pp. 517-18 (a court may "sever an unrelated claim ... when doing so would be in the interest of some or all of the parties."). It has been noted that "conservation of both time and money are the bedrock basis" for severance. Rossano v. Blue Plate Foods, Inc., 314 F.2d 174, 176 (5th Cir. 1963). Specific factors considered in determining the propriety of severance under Rule 21 include:

> (1) whether the claims arise out of the same transaction or occurrence;
>
> (2) whether the claims sought to be severed present different issues of fact or law;
>
> (3) whether settlement of the claims or judicial economy would be facilitated;
>
> (4) whether prejudice would be avoided if severance were granted; and

> (5) whether different witnesses and documentary
> proof are required for the separate claims.

See Anticancer, Inc. v. Pfizer, Inc., 2012 WL 1019796 at *1 (S.D. Cal.);

Boston Post Road Medical Imaging, P.C. v. Allstate Ins. Co., 2004 WL

1586429 at *1 (S.D.N.Y. 2004); Levine v. Federal Deposit Ins. Corp., 136

F.R.D. 544, 550 (D. Conn. 1991). Most of these factors strongly favor

severance in this case.

Essex persuasively argues that severance of Sabre's crossclaim

is warranted because Sabre's crossclaim will unnecessarily lengthen and

increase the costs of this litigation for Essex, and unduly complicate an action

that Essex initiated to resolve the narrow issue of whether coverage for Kart's

claim is precluded by a policy exclusion. In this regard, Essex points out that

different documentary proof is required for Sabre's crossclaim. Thus, Essex's

complaint requests the interpretation of an insurance policy with Kart,

whereas Sabre's crossclaim concerns indemnity from Kart pursuant to a

Subcontractor Agreement between Kart and Sabre, the resolution of which is

irrelevant to Essex's declaratory action.

Furthermore, Sabre alleges that the destruction of the cellular telephone tower was caused by Kart's negligent performance of the welding work, and it seeks "a determination of comparative fault" and "a declaration of the comparative liability" of Sabre and Kart for the damages (Doc. 29, pp. 6, 7). Thus, Sabre also alleges a tort claim that involves time consuming discovery to develop facts that are irrelevant to the resolution of Essex's declaratory action. For example, Essex states that it does not care who was at fault for causing the fire; rather, it is narrowly focused on a policy exclusion which applies if Kart was on the tower and Kart was acting within the scope of its work when the fire broke out.

Additionally, Sabre seeks far more comprehensive remedies than Essex (Doc. 49, pp. 4-5). Thus, Essex emphasizes that its declaratory action simply seeks a legal conclusion regarding the terms of an insurance policy, the facts of which are allegedly undisputed. Therefore, Essex argues that its declaratory action will likely be resolved on a motion for summary judgment. Sabre, however, seeks monetary damages, the apportionment of damages if there is a finding of comparative negligence, and a jury trial on all triable issues (Doc. 29). Thus, the resolution of Sabre's crossclaim will unduly

lengthen and complicate this litigation. Importantly, this undue prejudice to Essex is avoided by severing Sabre's crossclaim from Essex's declaratory action.

Sabre opposes severance of the crossclaim, arguing that Essex "does not have authority to motion the court for a severance" because its crossclaim is not asserted against Essex (Doc. 90, ¶4). This argument is unpersuasive. Thus, Sabre does not present any authority that Essex lacks standing to seek severance – as opposed to dismissal – of the crossclaim. Further, there is nothing in the language of Rule 21 that limits its invocation to a party to the claim. Moreover, unlike a claim for dismissal, Essex does have an interest in seeking severance of the crossclaim because, as discussed, its inclusion is unduly prejudicial to Essex. Notably, eliminating such prejudice is a primary purpose of Rule 21. See id., pp. 11-12.

Sabre also argues that its crossclaim is appropriately asserted in this lawsuit because it "arise[s] from the same core of facts [as the declaratory action] ... namely the cell tower fire" (Doc. 59, p. 7), and Kart "will have complied with the insurance provision of the Subcontractor Agreement only if a determination is made that ESSEX has a duty to defend and indemnify

KART and SABRE for the cell tower fire" (id., p. 6; see also Doc. 64, p. 2). However, Kart's compliance with the Subcontractor Agreement is not at issue in the declaratory action. Furthermore, although all the claims arise from the destruction of the cellular telephone tower, the legal and factual issues presented by the crossclaim, and the types of relief requested, go far beyond those presented by the declaratory action.

Moreover, severance is not precluded because the claims have facts in common. Rather, whether the claims arise out of the same occurrence or transaction is only one of several factors considered in determining the propriety of severance under Rule 21, unlike a determination under Rule 13(g).

For example, in CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc., 896 F.Supp. 505 (D. Md. 1995), the court ordered severance of a counterclaim despite factual overlap of the claims because it would serve the ends of justice and further the prompt and efficient resolution of the main action. The court reasoned that, without severance, those plaintiffs uninvolved in the counterclaim would bear the burden of extended and costly

discovery, pretrial procedures, and motion practice while they waited for adjudication of their own claims. Id. at 506-07.

Similarly, in this case, Sabre's crossclaim concerns legal and factual issues that are irrelevant to the declaratory action, and involves far more comprehensive remedies and a jury trial, which will also unnecessarily lengthen and complicate the litigation. On the other hand, if severed, Sabre will continue to litigate its crossclaim in federal court without having to refile its action.

Kart contends that it would unfairly increase its monetary burden to defend two separate actions. This contention is unpersuasive because, among other reasons, Essex is providing Kart a defense against Sabre's claims. Additionally, Kart provides no legal authority that it is more reasonable to place on Essex the burden of unnecessary delay and increased costs that would result if the crossclaim remains in this action.

In sum, Sabre's crossclaim would clearly predominate and unnecessarily complicate this action, thereby subjecting Essex to unwarranted delay and expense. Accordingly, because Essex would be unduly prejudiced

if Sabre's crossclaim remains in this lawsuit, I recommend that Sabre's crossclaim be severed from Essex's declaratory action under Rule 21.

## III.

Essex also filed a Motion to Strike Kart Construction's Affirmative Defenses and Motion to Dismiss Kart's Counterclaims (Doc. 31). As indicated, the dispute concerning the affirmative defenses was resolved by a previous Order (Doc. 84).[4] Therefore, remaining for resolution is the request to dismiss Kart's three counterclaims.

Count I of Kart's counterclaim asserts against Essex a breach of contract because Essex has not paid Kart's claim for losses resulting from the destruction of the cellular telephone tower (Doc. 21, p. 9). Count II seeks a declaration that Essex is obligated to indemnify Kart for all losses sustained as a result of the fire destruction of the tower (id., p. 10). Count III asserts against Essex bad faith for "failing and refusing to cover/indemnify" Kart for the losses resulting from the fire (id.).

---

[4] With regard to Kart's affirmative defenses, Kart agreed during the hearing to withdraw 1, 2, 3, 7, 8, 9, and 10, and the court struck without prejudice affirmative defenses 4, 5, 6, and 13. That was memorialized in a prior Order (Doc. 84). Therefore, this report and recommendation addresses only that portion of the motion seeking dismissal of the counterclaims.

The plaintiff argues that counts I and II of the counterclaim must be dismissed because they "seek[] the same relief requested in Essex's action for declaratory judgment against Kart" (Doc. 31, p. 9). Thus, the plaintiff argues that counts I and II of the counterclaim are "merely a 'mirror image' of the main action" that will be "wholly resolved by a resolution of Essex's claim" (id.).

Kart, however, aptly points out that, although the claims are similar, the relief is not. Thus, a ruling adverse to Essex on its declaratory claim "would merely result in a judgment that plaintiff was not entitled to the relief requested; [and] although it might logically flow from that judgment that defendant's interpretation of the contract was the correct one, [the] defendant[] would not be entitled to a judgment to that effect unless [it] specifically requested one" (Doc. 34, p. 13, quoting Medmarc Casualty Ins. Co. v. Pinero & Byrd PLLC, 783 F. Supp.2d 1214, 1217 (S.D.Fla. 2011)). Therefore, Kart's breach of contract and declaratory judgment claims are not redundant of the plaintiff's claim because a judgment against Essex in the declaratory action would not grant Kart its requested relief. Accordingly, I

recommend that the request to dismiss counts I and II of Kart's counterclaim be denied.

The plaintiff argues that count III of Kart's counterclaim, the bad faith claim, must be dismissed because an action for bad faith is premature and improper until there is a determination of coverage pursuant to the underlying policy (Doc. 31, p. 10). See Vest v. Travelers Ins. Co., 753 So.2d 1270 (Fla. 2000); Blanchard v. State Farm Mutual Auto Ins. Co., 575 So.2d 1289, 1291 (Fla. 1991). It is well-established that, "[i]f there is no insurance coverage, nor any loss or injury for which the insurer is contractually obligated to indemnify, the insured cannot have acted in bad faith" in rejecting coverage for the claim. Hartford Ins. Co. v. Mainstream Const. Group, Inc., 864 So.2d 1270 (Fla. App. 2004). Since the coverage issue is yet to be determined in this case, Kart's bad faith claim is unquestionably premature (Doc. 31, p. 11). Accordingly, the plaintiff seeks to dismiss the claim. "Kart concedes that a determination of coverage and contractual issues needs to be made before a bad faith claim may be prosecuted," but requests that the claim be abated in lieu of dismissal (Doc. 34, p. 14).

United States District Judge James D. Whittemore examined this issue in <u>Wells</u> v. <u>State Farm Mutual Auto Ins. Co.,</u> 2014 WL 3819436 at *1 n.1 (M.D. Fla) (citations omitted) and stated:

> Courts have the discretion to abate or dismiss bad faith claims when concurrently pled with a coverage action. ... The trend in Florida's appellate courts is to dismiss the bad faith claim without prejudice, rather than abate it, and ... authority from ... [the Florida] Supreme Court supports dismissal.

<u>See also</u> <u>Shulman</u> v. <u>Liberty Mutual Fire Ins. Co.,</u> 2006 WL 952327 at *3 (11th Cir. 2006) (unpub. dec.) (noting that "a Florida statutory bad faith claim cannot be brought at the same time as a claim disputing insurance coverage").

I see no apparent advantage to maintaining a claim that presently lacks a factual basis. In my view, it unnecessarily clutters the docket with a dormant claim (at best) that the court will need to keep track of administratively. On the other hand, Kart has not identified any meaningful prejudice if the claim is dismissed without prejudice to its reassertion if a factual basis is subsequently developed. Therefore, I recommend that count III of Kart's counterclaim, asserting bad faith against Essex, be dismissed without prejudice.

## IV.

For the foregoing reasons, I recommend that the Motion to Sever Sabre's Crossclaim Against Kart Construction, or Alternatively, Dismiss Sabre's Crossclaim Against Kart Construction Without Prejudice (Doc. 49) be granted to the extent that Sabre's crossclaim is severed from this action. Further, I recommend that Essex Insurance Company's Motion to Strike Respondent, Kart Construction Inc.'s Affirmative Defenses and Motion to Dismiss Kart Construction, Inc.'s Counterclaims (Doc. 31) be granted to the extent that count III of Kart's counterclaim, asserting bad faith against the plaintiff, is dismissed without prejudice because it is premature.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JANUARY 23, 2015

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

-21-

of its service shall bar an aggrieved party from attacking the factual findings

on appeal.  28 U.S.C. 636(b)(1).